UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CALVIN A. THOMAS                    CIVIL ACTION NO. 09-cv-0923

VERSUS                              JUDGE HICKS

WARDEN, LOUISIANA STATE             MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Calvin Thomas ("Petitioner") of distribution of cocaine.  He was adjudicated a fourth-felony offender and given a life sentence.  He filed a direct appeal, State v. Thomas, 842 So.2d 1206 (La. App. 2d Cir. 2003), writ denied, 842 So.2d 507 (La. 2004), and a post-conviction application.  He then filed this petition for writ of habeas corpus.  For the reasons that follow, it is recommended that the petition be denied.

### Relevant Facts

Shreveport police officer David Recchia testified that he and Sgt. Roger Skaggs were, on the night Petitioner was arrested, working as an undercover team.  Recchia was riding in the passenger seat of a pickup truck driven by Skaggs when he spotted a man, later identified as Petitioner, standing near a vacant house on Portland Avenue.  Recchia testified that he and Petitioner exchanged waives, and Petitioner came to the vehicle and asked if he could help them. Recchia said he was looking to get a twenty, street language for $20 worth of crack cocaine.  Petitioner directed the officers to nearby Lillian Street, where they parked.

Officer Recchia testified that Petitioner, before he went to get the twenty, gave Recchia a small piece of rock cocaine and told him he could "hit it."  Petitioner asked the men to promise to be there when he returned with the drugs. Petitioner soon returned with a baggie containing .2 grams of crack, and Recchia gave him a $20 bill in exchange.  Recchia testified that the lighting in the area was intermittent street lights, but he was able to get a good view of Petitioner, who conducted the transaction through the passenger side window of the truck.

As the transaction was completed, Recchia used a code phrase, and a van containing uniformed officers moved in to make an arrest.  Officer Jason Brooks testified that he and two other officers gave chase on foot and caught Petitioner on Darien Street, about two blocks away.  The officers all described Petitioner as wearing a white T-shirt and dark pants or jeans at the scene of the transaction.  Brooks said that he lost sight of Petitioner "for a brief second" when Petitioner went into a backyard and crawled underneath a car.  Brooks said that he came around the car "right behind him," and saw Petitioner's feet sticking out from beneath the car.  He signaled Officer Benton to assist him.

Petitioner refused to come out from beneath the car, and the officers had to drag him out.  Brooks was certain that the person he pulled from beneath the car was the same person he chased from the scene of the drug transaction.  Officer Randy Benton was asked how he knew the man removed from beneath the car was the one seen selling drugs.  He answered that the officers never lost sight of him during the chase and there were "no other individuals on the street, in the backyard or in the area where the suspect was apprehended in."  Officers

Page 2 of  20

Recchia and Skaggs arrived and positively identified Petitioner as the person who sold them the crack.

Officer Brooks read Petitioner his <u>Miranda</u> rights, which he waived.  Petitioner said that he smoked cracked and that he had gone to purchase drugs for the undercover agents in the hope that he would get a pinch of the dope from the agents.  Brooks said that the interview was not recorded because the officers did not have a recording device at the scene.

The $20 bill given to the seller was not recovered from Petitioner.  The officers back-tracked the foot chase area, including an alley and backyard, but did not find the bill.  The officers testified that they usually recover the money in this sort of buy-bust operation, but sometimes the suspect discards the money or even eats it before an arrest is made.  None of the officers, however, saw Petitioner do either of those things.

The officers involved in the arrest identified Petitioner at trial as the seller of the crack.  Audio and video recording of the transaction was made by a camera hidden in the truck, and that recording was played for the jury.

Petitioner testified that he lived in the Queensborough neighborhood where he was arrested.  He described the area of the arrest as a hangout spot where people get together and play loud music, sit around and talk, and have a couple of beers.  He said he was hanging out that night when word hit the street that the "jump out boys," which is the term some use to describe a Shreveport Police Department drug task force, were in the area.  Petitioner said everyone knew it was time to move out of the away or the jump out boys would slam anybody on the street and beat them up bad, something he said he had seen several times.

Petitioner testified that he hid beneath the car, and the first time officers saw him was when they spotted him there.  He claimed that other people were on the street that night, and he could see one person hiding while Petitioner was being arrested, but he did not want to snitch and incur risk for him and his family.  He claimed the officers did beat him up.  The jury was able to view a photograph taken that night immediately after the arrest and compare it to Petitioner's claim that the whole side of his face was swollen afterward.

Petitioner denied making the statement to police in which he admitted to participating in the drug transaction, but when asked if he used crack cocaine he said, "Yes, indeed, I do." Petitioner also admitted to a number of prior convictions, including simple burglary, middle-grade theft, possession of marijuana, battery on an officer, and others.  With respect to the seller of the drugs, Petitioner testified:

> The same guy that did that, which I know who did that, was in court yesterday with a possession charge.  Copped out two and a half years yesterday with a possession charge.  He's in CCC (the parish jail) right now and I talked to him about that.

The State put on rebuttal by recalling the officers involved in the arrest to reaffirm their identification of Petitioner as the seller.  Officer Recchia testified about the certainty of his identification:

> I am positive because I made a hand to hand transaction with the man.  I actually touched his hand, took the cocaine from his hand, placed a $20 bill in his hand. There was enough light I could see him and identify him. I had enough contact through time to know his dress, his person, his whole physical being. I also have an audio and video tape of him with his picture clearly on it.

Officer Brooks testified that Petitioner would be lying if he said Brooks physically abused him that night, and he repeated that Petitioner confessed to him that evening. A twelve-person jury returned a unanimous verdict of guilty of distribution of cocaine.

**Ineffective Assistance of Counsel**

### A.  Introduction

Petitioner's post-conviction application includes several claims of ineffective assistance of counsel.  To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system. <u>Id</u>.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  <u>Id</u>.

Finally, a <u>Strickland</u> petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court."  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim.  <u>Pape v. Thaler</u>, 645 F.3d 281, 288 (5th Cir. 2011).

### B.  No Defenses

Petitioner argues that trial counsel was ineffective because he did not offer the jury any type of defense beyond a simple denial of the allegations.  Petitioner proposes that entrapment was an available defense. When this was argued in the post-conviction application, the trial court rejected it because the evidence showed that Petitioner was clearly predisposed to commit the crime. The officers merely asked for drugs, and Petitioner supplied them. Tr. 750. The state appellate court described the application as raising numerous conclusory claims of ineffective assistance of counsel, and it found no merit in the application.  Tr. 802.  The Supreme Court of Louisiana denied writs without comment.  Tr. 849.  The trial court was the only state court to offer a reasoned opinion, so the undersigned will discuss only that decision when analyzing the other post-conviction claims.

The defense bears the burden of establishing entrapment by a preponderance of the evidence. It applies only when a law enforcement official or person acting in cooperation with the official originates the idea of the crime and then induces the person to engage in conduct the person is not otherwise disposed to do so. It is not entrapment, however, if

officers merely furnish a defendant who is predisposed to commit a crime the opportunity

to do so.  State v. Rogers, 850 So.2d 838, 843 (La. App. 5th Cir. 2003) (rejecting entrapment

defense in remarkably similar factual setting).  Convictions are obtained routinely in cases

such as this and Rogers when undercover police engage in buy/bust operations.  Counsel was

not ineffective for failing to raise the defense, and the state court's rejection of this argument

was certainly not an objectively unreasonable application of Strickland.

### C.  Insufficient Evidence

Petitioner argues that trial counsel was ineffective for failing to convince the jury that

the prosecution did not carry its burden of proof, and that appellate counsel was ineffective

for not raising the issue on appeal.  Trial counsel, through cross-examination and closing

argument, made the same points raised by Petitioner: the absence of buy money, the officers

briefly losing sight of the suspect during the chase, and lack of a clear video of the suspect's

face.  The jury was not persuaded, but that does not mean counsel was ineffective.

As for raising the issue on appeal, the standard of review would have been whether

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to

"resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from

basic facts to ultimate facts." Id. When a petitioner claims that appellate counsel omitted an

issue that should have been argued, the petitioner must show that had the issue been raised

there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

The trial court rejected these arguments on post-conviction review, noting that the "overwhelming evidence" was against Petitioner, and the issue was a credibility call by the jury. Tr. 752. Had appellate counsel raised the sufficiency argument, there is no reason to believe that it would have been successful. Jackson does not permit the appellate court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the jury. If the jury findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. State ex rel T.E., ____ So.3d ___, 2012 WL 2478480 (La. 2012). The state court's rejection of this argument was not an objectively unreasonable application of Strickland.

### D.  Uncalled Witnesses

Petitioner argues that if counsel would have conducted an investigation it is "highly probable" that witnesses would have been found to offer an alibi or at least testify that it is common for residents of the neighborhood to hide when the jump out boys are in the area. He makes a similar argument that it was the person who notified everyone that the jump out boys were coming who actually committed the crime (though Petitioner does not state the basis of this knowledge). He says that he gave this information to his counsel, but counsel did not attempt to find the witnesses.

The state court rejected this claim because Petitioner did not supply any names of witnesses or affidavits. Tr. 750. "[C]omplaints of uncalled witnesses are not favored in

federal habeas corpus review because allegations of what the witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2000). In addition, for Petitioner to demonstrate the requisite <u>Strickland</u> prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." <u>Id</u>. <u>Evans</u> reversed a district court that had granted habeas relief on a similar <u>Strickland</u> claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense. <u>See also Bruce v. Cockrell</u>, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting <u>Strickland</u> claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial."); and <u>O'Brien v. Dretke</u>, 156 Fed. Appx. 724 (5th Cir. 2005) (denying COA when witness's affidavit was submitted but it "d[id] not indicate what the nature of his testimony would have been.")  As for the "real seller," Petitioner has yet to explain how he could prove that the mystery person was the guilty party, and he has yet to identify the person despite having several years to do so.  The state court did not act unreasonably in rejecting this group of claims.

### E.  Forced to Testify

Petitioner argues that counsel's failure to present evidence from other sources effectively forced Petitioner to take the stand, which allowed the jury to hear about his criminal record. The trial court rejected this claim as it did the underlying arguments addressed above, because Petitioner did not identify the evidence or witnesses that should

have been called.  Tr. 751.  Once again, Petitioner has not identified a single witness or other bit of evidence that counsel could have offered that would have avoided the need for Petitioner to testify.  The state court's rejection of this claim was not an objectively unreasonable application of <u>Strickland</u>.

### F.  No Meaningful Relationship

Petitioner argues that counsel did not meet with him before trial enough to establish a relationship of trust.  He says that he met with counsel only twice, and both times counsel only wanted to talk about Petitioner taking a plea bargain.  Petitioner told the trial judge that he did not see eye to eye with his attorney, who told him that if he went to trial he would be convicted and face a life sentence as a multiple offender.  Counsel strongly recommended that Petitioner accept a plea offer for a 15-year sentence, but Petitioner rejected the offer and told counsel to "crank it up."  Tr. 149-57.

The state court rejected this argument because it noted that counsel supplied Petitioner with the State's discovery responses and police reports and discussed them with him. Petitioner mistrusted counsel for some reason, but there was no showing that counsel did anything that caused that mistrust.  Tr. 751.  Petitioner repeats his argument with this court, and it still lacks merit.  The record shows that counsel was giving extraordinarily accurate advice, but Petitioner for some unknown reason foolishly rejected it and insisted on going to trial and facing a life sentence, which he now has.  There is no factual basis in the record for Petitioner to have reasonably mistrusted his appointed counsel.  This claim also lacks merit.

### G.  Allowing Hearsay

Sgt. B. W. Strange testified that he was a supervisor driving a semi-marked wing car that stayed on the perimeter of the area worked by the undercover team. He was called briefly to gain admission into evidence photographs he took that night of Petitioner and the drugs. When asked where he came into contact with Petitioner that night, he said the contact "took place after he was apprehended, after making an illegal transaction with the undercover agents, David Recchia and Sgt. Skaggs, at the corner or in the vicinity of Lillian and Virginia." Tr. 318.  Strange was not cross-examined at that time, but when he returned to the stand on rebuttal defense counsel had him admit that he did not see the transaction or arrest, heard only bits and pieces of it over a transmitter, and had knowledge only on the video and what other officers told him.  Tr. 359-60.

Petitioner complained on post-conviction that counsel should have objected to the testimony that was hearsay and not based on any personal observation.  The state court rejected this claim, noting the effective cross-examination.  Tr. 751.  That was not an objectively unreasonable application of Strickland.  Counsel did address the issue effectively on cross-examination.  Moreover, there is no prejudice. There is absolutely no reason to believe that the verdict would have been different had counsel objected and the testimony been excluded.

### H.  Improper Rebuttal

Petitioner complained on post-conviction that trial counsel should have objected when the prosecutor called the involved officers back to the stand on rebuttal. Petitioner argues that

La. C. Cr. P. art. 774 confines rebuttal to answering the argument of the defendant.  That article, however, governs rebuttal during closing arguments. Louisiana Code of Evidence article 611(E) provides that the State shall have the right to rebut evidence adduced by the defense.  Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. In a criminal case, rebuttal may be used to strengthen the state's original case. State v. Franklin, 956 So.2d 823, 837 (La. App. 2d Cir. 2007). Its admission is committed to the sound discretion of the trial judge. Id.

The trial court reasoned that when Petitioner took the stand and denied that he was the person who sold the cocaine, the State was allowed to recall the officers to rebut the contention that it was Petitioner and not someone else who sold the cocaine. Tr. 751.  Any objection by counsel in this regard would almost certainly have been overruled, and failure of counsel to make meritless objections is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002). The state court did not unreasonably apply Strickland to this claim.

### I.  Photograph of the Drugs

Sgt. Strange testified that he took photographs of Petitioner and the drugs that were recovered.  The State moved to introduce the photographs.  Defense counsel objected to the photograph of the drugs, which he said was cumulative by reproducing something already in evidence.  The exhibit was admitted.  Tr. 320-21.

Petitioner argues that appellate counsel should have raised this issue on appeal.  The trial court rejected this argument on post-conviction because the photographs were admitted

Page 12 of  20

with a proper evidentiary basis and were "clearly admissible." Tr. 752. The photograph of the drugs was certainly relevant in establishing the State's case, and there was no impermissible prejudice when the actual drugs were sitting in evidence right there in the courtroom. Evidentiary rulings such as this are reviewed on direct appeal for abuse of discretion. There is not a reasonable probability that, had appellate counsel raised this issue, he would have won on appeal. It is almost certain that the trial judge's admission of the evidence would not be considered error. Even if it were, the error would be harmless in light of the other evidence. This claim is frivolous.

### J. Lack of Funding

Petitioner was represented by an attorney from the Caddo Parish Indigent Defender's Office. He argues that the office was underfunded, so that his counsel was overworked and could not hire an investigator to seek out the truth. The state court denied this claim because Petitioner did not show what an investigation would have produced or how he suffered any particular prejudice because of a lack of funding. Tr. 752. Petitioner continues to offer only a conclusory assertion of this issue. Such conclusory assertions are insufficient to warrant relief under Strickland. Mallard v. Cain, 515 F.3d 379, 382 (5th Cir. 2008).

### K. Habitual Offender Hearing

The State sought to adjudicate Petitioner an habitual offender, which would enhance his penalty for the cocaine distribution conviction. The State presented evidence in the form of certified copies of court records and expert fingerprint testimony to establish the following convictions:

(1)  Simple Burglary, 1990; three years hard labor, suspended, supervised probation.

(2)  Felony Theft, 1992; one year at hard labor.

(3)  Felony Theft, 1994; one year hard labor.

(4)  Distribution of Cocaine, 2001; instant offense.

Tr. 382-95.

Defense counsel cross-examined the fingerprint witness about some of his testimony and his familiarity with Petitioner. He did not put on any defense evidence and simply submitted for a decision on the record.  The court found Petitioner to be a fourth-felony offender.  Tr. 395.

Petitioner argues that counsel should have challenged the prior convictions as deficient because the middle-grade theft charge did not reflect the items that were stolen (Petitioner claims the value of the items was improperly assessed), and the simple burglary plea was to burglarizing a structure at one address when a different address was listed in a police report.  The state court noted that the bill of information did not need to list the items stolen, and any discrepancy about the burglarized address was waived by the guilty plea.  Tr. 751.

Petitioner also argued that counsel should have objected to the lack of evidence of proper compliance with Boykin in connection with the prior guilty pleas.  He contended the minutes submitted at the hearing showed the trial judge informed Petitioner of his Boykin rights but did not show that the rights were waived.  Under Louisiana law, the prosecution had the burden at the hearing to prove the existence of the prior guilty pleas and that the

defendant was represented by counsel.  If the prosecution met that burden, Petitioner had the burden to produce some affirmative evidence showing an infringement of his rights in the taking of the plea.  State v. Shelton, 621 So.2d 769 (La. 1993).  Petitioner does not deny that he was represented by counsel.  He admits that the state court minutes show he was informed of his Boykin rights, but he contends the minutes do not show that he waived those rights.  The trial court found that this claim lacked merit because the minutes "show that defendant was informed of his Boykin rights and petitioner indicated he understood and that he wished to plead guilty."  Tr. 752.

Transcripts in the record fully support that conclusion.  They show that Petitioner was represented by counsel, was advised of his rights, stated that he understood what he was giving up by pleading guilty, and that he had discussed the issues with his lawyer.  See, e.g., Tr. 72-77 and 79-84.  Petitioner makes a similar argument that appellate counsel was ineffective for not raising these issues.  The record shows that the state court's rejection of these claims was entirely reasonable.  Accordingly, habeas relief is not permitted.

**L.  Excessive Sentence; Appellate Argument**

At the original sentencing, the trial judge noted that Petitioner had completed his GED while in jail, worked as a tutor for other inmates, and completed a number of other programs.  He said that he would sentence Petitioner to the minimum sentence under the circumstances, which he determined to be 30 years hard labor.  The judge recommended a boot camp type program and drug treatment. Tr. 401-05.  The State filed a motion for reconsideration on the grounds the habitual offender statue actually mandated a natural life sentence and permitted

no discretion except from a constitutional standpoint.  The judge was persuaded the State was correct. He reasoned that, given the history of criminal conduct and the nature of the most recent charge, the sentence did not exceed constitutional bounds.  Tr. 407-17.

Appellate counsel argued that the sentence was excessive in violation of Louisiana Constitution Art. I, § 20.  Tr. 434-38.  The appellate court observed that it could declare a mandatory sentence excessive under the state constitution, but only in the rare case where there is clear and convincing evidence that would rebut a presumption of constitutionality. Lack of violence could not be the only reason, or even a major reason, for declaring a sentence excessive.  The appellate court concluded that the trial judge properly found no unusual circumstances justifying a downward departure from the mandatory life sentence. State v. Thomas, 842 So.2d at 1207-08.

Petitioner argues that appellate counsel was ineffective in the presentation of this claim. He cites two Louisiana appellate decisions in which persons convicted of selling small amounts of cocaine, with limited non-violent criminal history, were found entitled to relief from a life sentence.  For each such case, however, there are many others in which life sentences were imposed after several convictions for drug possession, burglary, theft, and other non-violent crimes.  Counsel made reasonable arguments in the appellate brief, and they were fully addressed by the appellate court.

When Petitioner raised this issue in his post-conviction application, the trial court reasoned that the claim of excessive sentence was raised on appeal and could not be raised on post-conviction.  The court cited no authority, but apparently invoked the rule of State ex

rel. Melinie v. State,  (La. 1996) that a claim of excessive sentence may not be raised in a post-conviction application and the holding in State v. Bush,  977 So.2d 1012, 1014 (La. App. 2d Cir. 2007) that such claims cannot avoid Melinie by being styled as Strickland claims.

The trial court ruling might give rise to a procedural bar against habeas review. But the appellate court's summary rejection of the post-conviction arguments did not raise a procedural bar and might be considered a reasoned opinion that would require review on the merits under the standard of 28 U.S.C. § 2254(d).  It is not worth resolving the issue because the claim lacks merit under any standard.  Petitioner has not articulated any argument that appellate counsel could have made beyond those in the brief that, if made, would give rise to a reasonable probability that he would prevail on appeal and persuade the appellate court to reduce his legislatively mandated sentence.

**Excessive Sentence**

Petitioner's final habeas argument is that his sentence was excessive in violation of the Eighth Amendment.  Habeas relief is not available on a claim unless the applicant has first exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A).  When the excessive sentence argument was presented on direct appeal, it was argued solely in terms of Louisiana law, invoking Louisiana Constitution Art. I, § 20 and related jurisprudence.  Tr. 434-37. There was no invocation of Eighth Amendment or any federal jurisprudence.

Magistrate Judge Hill has reasoned that, in light of authorities such as <u>Baldwin v.</u> <u>Reese</u>, 124 S.Ct. 1347 (2004), the exhaustion of a state-law claim of excessive sentence is insufficient to exhaust a federal Eighth Amendment excessive sentence claim, even though the claims may be somewhat similar.  <u>Papillion v. Cain</u>, 2007 WL 3046063, *10 (W.D. La. 2007).  <u>See</u> <u>also</u> <u>Adams v. Robertson</u>, 117 S.Ct. 1028, 1030 n. 3 (1997) (per curiam) (passing invocations of due process that fail to cite the Federal Constitution or any cases relying on the Fourteenth Amendment do not "meet our minimal requirement that it must be clear that a federal claim was presented" because they could just as easily refer to the provisions of the state constitution).

It is too late under Louisiana law to now return to state court and exhaust the claim, so it is technically exhausted but subject to a procedural bar that requires a showing of cause and prejudice to overcome. <u>Jones v. Jones</u>, 163 F.3d 285, 296 (5th Cir. 1998). The undersigned finds that considerations of comity, federalism and judicial efficiency warrant invoking the bar sua sponte. To do otherwise could encourage prisoners to save their parallel federal law claims until they file in federal court, and then seek to avoid the burden of Section 2254(d) by arguing the federal claim was not adjudicated on the merits in state court. Petitioner may attempt in his objections to articulate cause and prejudice to overcome his default.  <u>See</u> <u>Magouirk v. Phillips</u>, 144 F.3d 348, 359 (5th Cir. 1998) (sua sponte invocation of procedural bar in Report and Recommendation satisfied due process).

If one were to disagree with the exhaustion analysis and find that Petitioner did exhaust an Eighth Amendment claim on direct appeal, the claim would face a difficult burden

on the merits. The Court in <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003) reviewed its Eighth Amendment decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief under Section 2254(d) because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential standard of the statute.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

      An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of July, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE